CADLEROCK PROPERTIES JOINT VENTURE, L.P. *v.*
COMMISSIONER OF ENVIRONMENTAL
PROTECTION ET AL.
(SC 16170)

McDonald, C. J., and Norcott, Palmer, Sullivan and Vertefeuille, Js.

Argued January 20—officially released July 18, 2000

*Jill Hartley,* for the appellant (plaintiff).

*Patricia A. Horgan,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Cadlerock Properties Joint Venture, L.P. (Cadlerock), appeals from the judgment of the trial court dismissing its administrative appeal from the decision of the defendant department of environmental protection (department) in which the named defendant, the commissioner of environmental protection (commissioner),[1] issued an abatement order regarding the plaintiff's real property located in both Ashford and Willington. The order, which was issued on August 15, 1997, pursuant to Connecticut's Water Pollution Control Act; General Statutes § 22a-416 et

---

[1] References herein to both the department and the commissioner are to the "defendants."

seq.;[2] and the Solid Waste Management Act; General Statutes § 22a-207 et seq.;[3] alleged that the plaintiff was maintaining a facility that was polluting state waters and further alleged that the plaintiff was maintaining a solid waste disposal facility on its property without a permit. The commissioner ordered Cadlerock to undertake extensive investigatory actions regarding the soil, groundwater and solid waste pollution, to undertake remedial actions to abate such pollution, to monitor the effectiveness of those remedial actions, and to remove all solid waste on the property.

The plaintiff appealed from the commissioner's decision to issue the abatement order. On October 23, 1998, after conducting public hearings, the administrative hearing officer rejected the plaintiff's claim of selective

[2] General Statutes § 22a-424 provides in relevant part: "The commissioner shall have the following powers and duties . . .

"(f) To issue . . . orders prohibiting or abating pollution of the waters of the state, or requiring the construction, modification, extension or alteration of pollution abatement facilities or monitoring systems, or any parts thereof, or adopting such other remedial measures as are necessary to prevent, control or abate pollution . . . ."

Pursuant to General Statutes § 22a-432, "[i]f the commissioner finds that any person has . . . created a condition . . . or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution. . . ."

[3] In particular, General Statutes § 22a-208a (a) provides in relevant part: "The Commissioner of Environmental Protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . ."

General Statutes § 22a-225 (a) provides in relevant part: "The commissioner may issue . . . orders correcting or abating violations under this chapter or adopting other remedial measures as are necessary to correct or abate such violations. Such orders may be issued to any person who violates any provision of this chapter or any regulation adopted or permit issued pursuant to this chapter, or to the owner of any land on which the violation occurs regardless of whether the owner of the land participated in the violation. . . ."

enforcement and affirmed the commissioner's order. The plaintiff appealed from the administrative decision to the Superior Court pursuant to General Statutes § 4-183,[4] part of the Uniform Administrative Procedure Act (UAPA). General Statutes § 4-166 et seq. The trial court upheld the hearing officer's decision and dismissed the appeal, and the plaintiff appealed. We affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. The plaintiff is the present owner of a 335 acre parcel of land located in Ashford and Willington. The site contains two ponds and some intermittent watercourses; one third of the site constitutes wetlands. The groundwater on this site is classified as "GA" and thus, should be suitable to serve as a source of public or private water supply without treatment and should contain no chemical or biological constituents other than those of natural origin, according to state water quality standards. See General Statutes § 22a-426.[5] The depart-

[4] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . .

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment. . . ."

[5] General Statutes § 22a-426 (a) provides in relevant part: "The Commissioner of Environmental Protection shall adopt, and may thereafter amend, standards of water quality applicable to the various waters of the state or portions thereof as provided in this section. . . ."

ment received complaints about potential pollution on the site as early as 1977. Both the department, specifically its bureau of water management, and private environmental analysts conducted site investigations between 1991 and 1997 that revealed significant sources of soil, groundwater and solid waste pollution.

The site investigations revealed two principal areas of contamination. The northwest disposal area, consisting of approximately one-quarter acre of land in the northwest portion of the plaintiff's 335 acre property, had soil stained a blue-green color, with solid waste deposited on the surface and buried underground, and no vegetation. Soil tests revealed high levels of lead, copper, barium and cadmium, pollutants that pose a threat to human health and to groundwater quality. During a department investigation in 1992, Benjamin Schilberg acknowledged in writing that approximately thirty years earlier, he had leased this small portion of the site that later became known as the northwest disposal area. He admitted that he had burned insulated copper wire at the location to recover copper for resale, thereby causing copper oxidation of the soil.

A second contaminated area on the plaintiff's property is located in the south central portion of the site along Route 44. A restaurant and scrap metal business were operated on this site until about 1980, when the buildings were substantially damaged by fire. In 1990, Ashford Development Corporation (Ashford), then the owner of the property, demolished the burned out structures and disposed of the burned debris on this site without a permit. Solid waste has been observed on the surface and buried underground, and various contaminants (i.e., total petroleum hydrocarbons and volatile organic compounds) have been found in the soil. The hearing officer, after hearing uncorroborated expert testimony to the same effect, concluded that the pollution at the south central disposal area posed a

threat to human health and was reasonably likely to pollute the groundwater.

The department never pursued any enforcement action nor did it discuss voluntary remediation with Schilberg.[6] In 1993, the department tried unsuccessfully to persuade Ashford to address the pollution of the site voluntarily. The department did not pursue any enforcement action against Ashford because of a lack of resources within the department. In 1996, Cadle Properties of Connecticut, Inc. (Cadle Properties), obtained the site. After unsuccessfully trying to convince Cadle Properties to remediate voluntarily, the department issued an abatement order on February 26, 1997.[7] On August 15, 1997, the department withdrew that order and issued an abatement order to the plaintiff, an affiliate of Cadle Properties, upon learning that the property had been transferred to the plaintiff.[8]

---

[6] In oral argument before this court, the defendants indicated that the plaintiff, as the current property owner that is subject to the abatement order, can seek contribution from others like Schilberg, who caused the pollution. This is supported by General Statutes § 22a-452 (a), which provides that "[a]ny person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby."

[7] Cadle Properties of Connecticut, Inc., is also referred to as Cadle Company of Connecticut, Inc., in some of the documentation in these proceedings.

[8] Cadlerock was certified in Ohio as a limited partnership in November, 1996. At that time, Daniel C. Cadle was listed as the general partner. Cadle was also the named president of Cadle Properties, which was incorporated in Connecticut on November 1, 1994.

The plaintiff filed an administrative appeal from the abatement order, claiming that the commissioner had engaged in selective enforcement in that Schilberg already had admitted in writing that he was responsible for polluting a portion of the site, but was not subject to any enforcement action. An administrative hearing officer conducted public hearings on November 24, November 25, December 3, December 11, and December 17, 1997. During the administrative hearings, Elsie Patton, the assistant director of the permitting, enforcement and remediation division in the department's waste management bureau, testified that the department did not pursue Schilberg because he was responsible only for a portion of the pollution and pursuing enforcement action against both Schilberg and the plaintiff, the current property owner, would have delayed remediation of the entire site.[9] The hearing officer rejected the selective enforcement defense and affirmed the commissioner's order. On the plaintiff's appeal, the trial court affirmed that decision and dismissed the plaintiff's appeal.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. Thereafter, we transferred

---

[9] Patton testified that "[Schilberg's] activities only created part of the problem [a]nd to order him to clean up part of the problem would not result in what [the department's] goal is . . . to get the whole site cleaned up . . . ." Patton explained that "when [the department] issue[s] orders to multiple parties, that complicates the enforcement process." The department decided that "the most efficient way for us to get a cleanedup site is to go with a single order [to the property owner]."

The dissent contends that "allocation of liability [for cleanup costs] is irrelevant because the parties are jointly and severally liable under § 22a-225." We disagree. The plaintiff's joint and several liability with Schilberg applies only to the small contamination area in the northwest portion of the plaintiff's property; Schilberg has no liability for the larger area of contamination in the south central portion of the property. As Patton testified, the department's goal was the quick and efficient cleanup of the entire site. As we will discuss in this opinion; see part I of this opinion; the department acted within its broad discretion in pursuing the plaintiff alone.

the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The plaintiff claims: (1)that the trial court improperly upheld the administrative hearing officer's decision that the plaintiff failed to establish the affirmative defense of selective enforcement and improperly concluded that even if there were selective enforcement, the abatement order would not have been rendered void; (2) that the trial court improperly upheld the hearing officer's evidentiary rulings (a) excluding from evidence a newspaper article quoting a department staff person as saying it was the department's policy to pursue all polluters, and (b) preventing the plaintiff from discovering three internal department memoranda concerning prior enforcement action with respect to the site on the ground that the documents were protected by the attorney-client privilege and (c) not reaching the hearing officer's evidentiary ruling allowing into evidence testimony allegedly regarding the parties' settlement negotiations and the plaintiff's actions in response to the administrative order; and (3) that the trial court improperly affirmed the hearing officer's decision despite the fact that it was clearly erroneous in view of the evidence in the record. We affirm the judgment of the trial court.

We begin by articulating the applicable standard of review in an appeal from the decision of an administrative agency. "Judicial review of [an administrative agency's] action is governed by the [UAPA] . . . and the scope of that review is very restricted. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819

(1986). Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Id. Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Id. Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. *New Haven* v. *Freedom of Information Commission*, supra, 774." (Citation omitted; internal quotation marks omitted.) *State Board of Labor Relations* v. *Freedom of Information Commission*, 244 Conn. 487, 493–94, 709 A.2d 1129 (1998).

We also have held that an exception is made "when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) *Burke* v. *Fleet National Bank*, 252 Conn. 1, 10, 742 A.2d 293 (2000). The plaintiff claims that the department's decision is not entitled to deference because this question of law previously has not been subject to judicial scrutiny. We disagree. This court previously has upheld the commissioner's authority to issue a permit for a solid waste facility under General Statutes § 22a-208a (b) and to issue orders to abate pollution under General Statutes § 22a-432, which was relied upon to issue the abatement order to the plaintiff here. See, e.g., *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 382, 627 A.2d 1296 (1993) (concluding that "pursuant to § 22a-432, the defendant was empowered to order a cleanup of polluted land without regard to fault or economic hard-

ship"); *Keeney* v. *L & S Construction*, 226 Conn. 205, 206–207, 626 A.2d 1299 (1993) (upholding commissioner's injunctive order under § 22a-208a); *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 590–91, 590 A.2d 447 (1991) (affirming commissioner's discretion under § 22a-208a to order plaintiff to cease operating unpermitted solid waste disposal facility and to remove all solid waste).

Agencies, in general, are given broad discretion to exercise their regulatory authority. See *Commission on Hospitals & Health Care* v. *Stamford Hospital*, 208 Conn. 663, 673, 546 A.2d 257 (1988). The United States Supreme Court has compared an agency's exercise of its enforcement power to that of a prosecutor. See *Heckler* v. *Chaney*, 470 U.S. 821, 832, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985); *Butz* v. *Economou*, 438 U.S. 478, 515, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). In Connecticut, the legislature has granted the department broad discretion to enforce the environmental laws. See, e.g., General Statutes §§ 22a-6, 22a-224, 22a-225 and 22a-432. This court has held specifically that the department has the discretion to choose the appropriate enforcement action to remedy pollution. See *Starr* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 382. Furthermore, the department does not abuse its discretion by issuing an abatement order against a current property owner regardless of the owner's culpability for the pollution of the property. See id., 393. With these principles in mind, we turn to the plaintiff's claims.

I

The plaintiff's first claim is that the trial court improperly affirmed the hearing officer's decision that the plaintiff had failed to prove that the department had engaged in selective enforcement. We disagree.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essen-

tially a direction that all persons similarly situated should be treated alike. *City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985) (citing *Plyler* v. *Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786 [1982]). . . . *Zahra* v. *Southold*, 48 F.3d 674, 683 (2d Cir. 1995). A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LaTrieste Restaurant & Cabaret, Inc.* v. *Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair* v. *Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980), cert. denied, 450 U.S. 959, 101 S. Ct. 1418, 67 L. Ed. 2d 383 [1981])." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 392–93, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). The claimant has the burden of proving a selective enforcement claim. See id., 391–93.

The plaintiff argues that the trial court improperly upheld the hearing officer's determination that the plaintiff did not satisfy the first prong of a selective enforcement claim by comparing itself to other similarly situated parties. In particular, the plaintiff asserts that it compared the department's treatment of it to that of Ashford, a prior owner, and Schilberg, a previous lessee who admitted polluting the site, neither of which was subject to any enforcement action. The trial court found that "[t]he plaintiff compares itself not to other similarly situated owners of property, but, rather, to other parties who participated in the pollution of the site. Such persons as nonowners would not be similarly situated." We agree with the trial court that the plaintiff did not compare itself to other similarly situated parties.

Recently, we held that "the requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all *relevant* aspects were treated differently . . . . *Dartmouth Review* v. *Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). . . . *Rubinovitz* v. *Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)." (Emphasis in original; internal quotation marks omitted.) *Thomas* v. *West Haven*, supra, 249 Conn. 402. We agree with the trial court that the plaintiff only compared itself with others who were involved in creating the pollution at the property. During the administrative hearing, the plaintiff's counsel cross-examined Thomas O'Connor, a department environmental analyst responsible for investigating the site and recommending administrative action. O'Connor admitted that the department's treatment of the plaintiff differed from that of both Schilberg and Ashford, neither of which was issued an abatement order. Schilberg admitted in writing to having burned copper wire and temporarily deposited the waste in the northwest disposal area. The hearing officer made findings that Ashford demolished previously burned structures and disposed of the debris without a permit in the south central disposal area.[10] Both areas were determined to be significant sources of soil, groundwater and solid waste pollution. We find that the plaintiff compared itself only to previous polluters of the site and therefore failed to prove the first prong of the selective enforcement claim.[11] The plaintiff

[10] In oral argument before this court, the defendants acknowledged that aside from Schilberg, who had admitted in writing his responsibility for polluting the approximately one-quarter acre of the site in the northwest disposal area, they have not determined who polluted the remainder of the 335 acre site. Thus, Ashford is not a named polluter despite the hearing officer's findings and the trial court's affirmance of those findings.

[11] Even if we were to assume, arguendo, that the plaintiff satisfied the first prong of the selective enforcement claim, the plaintiff failed to prove the second prong—that the department's treatment of the plaintiff was motivated by a malicious or bad faith intent to injure. The plaintiff argued that the trial court should have considered whether the department failed

did not compare itself to similarly situated current own-
ers of the property who were not directly responsible
for the pollution. Thus, the trial court properly affirmed
the hearing officer's decision that the department did
not engage in selective enforcement.[12]

to pursue Schilberg because it was motivated by an arbitrary standard or
classification, in particular, a political bias. Specifically, the plaintiff asserted
that Schilberg's son, Bernard Schilberg, as a member of the underground
storage tank petroleum cleanup account review board since 1994, had con-
tact with department staff members, including the chief of the department's
waste management bureau.

Regarding the second prong of the selective enforcement claim, this court
previously held that "[when a plaintiff] does not allege selective treatment
based upon his race, religion, or any intentional effort by [the] defendants
to punish him for exercising his constitutional rights, [the plaintiff] must
demonstrate that [the] defendants maliciously singled [him] out . . . with
the intent to injure him. . . . *Crowley* v. *Courville*, 76 F.3d 47, 52–53 (2d
Cir. 1996)." (Internal quotation marks omitted.) *Thomas* v. *West Haven*,
supra, 249 Conn. 393.

We agree with the hearing officer that the evidence did not support a
conclusion that the department had declined to pursue enforcement actions
against Schilberg because of a malicious or bad faith intent to injure the
plaintiff, in particular, that the department had a political bias. The plaintiff
has the burden of proving that administrative officials are biased. See *Clis-
ham* v. *Board of Police Commissioners*, 223 Conn. 354, 362, 613 A.2d 254
(1992). The hearing officer found that Patton and O'Connor "were not aware"
of and "had no contact" with Bernard Schilberg at the time they decided
to issue the abatement order. Patton testified that she alone made the
decision to issue an abatement order against the plaintiff, the current prop-
erty owner, because it was the most efficient way to remediate the site.
Moreover, the abatement order was issued by the bureau of water manage-
ment, with which Bernard Schilberg was not affiliated. Furthermore, the
hearing officer stated in his final decision that Patton testified that "Benjamin
Schilberg was responsible, at most, for only a portion of the pollution at
the site and issuing an order to both [him] and the [plaintiff] would have
unduly delayed the [administrative] hearing process and thus the overall
remediation of the site." According to the hearing officer, Patton understood
that the department's "primary enforcement goal [was] to get contaminated
sites cleaned up as quickly and as efficiently as possible . . . ." We agree
with the hearing officer's findings that the department's intention was to
remediate efficiently the pollution on the site and, therefore, there was no
evidence of a malicious or bad faith intent toward the plaintiff.

[12] The plaintiff further claims that the trial court improperly concluded
that even if the department had engaged in selective enforcement, the order
against the plaintiff would not have been rendered void. Because we have

## II

The plaintiff next argues that the trial court improperly upheld certain of the hearing officer's evidentiary rulings, to wit: (1) to exclude from evidence a newspaper article quoting a department staff person as stating that it was the department's policy to pursue all polluters; and (2) to prevent the plaintiff from discovering three internal department memoranda concerning prior enforcement action with respect to the site on the ground that the documents were protected by the attorney-client privilege. The plaintiff also claims that the trial court improperly did not reach the hearing officer's evidentiary ruling that allegedly allowed into evidence testimony regarding the parties' settlement negotiations and the plaintiff's actions in response to the administrative order. The trial court found that "[t]he plaintiff's evidentiary claims relate to the evidence which would purportedly contradict the assertion that the parties responsible for the active pollution were not the subjects of the order to avoid a more complex hearing. The relevancy of such evidence is negligible in view of the limited impact."

We agree with the state that the record for reviewing these claims is incomplete given that the trial court dismissed the evidentiary claims without articulating a basis for each claim. "It is the appellant's burden to provide an adequate record for review. Practice Book § 60-5; *Barnes* v. *Barnes*, 190 Conn. 491, 494, 460 A.2d 1302 (1983). It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision; *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995); to clarify

rejected the plaintiff's selective enforcement claim and the supporting evidentiary claims; see part II of this opinion; we decline to reach the issue of whether the order would have been void.

the legal basis of a ruling; *Leverty & Hurley Co.* v. *Commissioner of Transportation*, 192 Conn. 377, 379, 471 A.2d 958 (1984); or to ask the trial judge to rule on an overlooked matter. *Wolk* v. *Wolk*, 191 Conn. 328, 335 n.1, 464 A.2d 780 (1983). In the absence of any such attempts, we decline to review this issue." *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33–34, 727 A.2d 204 (1999). We find that the trial court record is inadequate to review the plaintiff's evidentiary claims.[13]

## III

The plaintiff's final claim is that the trial court improperly affirmed the hearing officer's decision because it was clearly erroneous in view of the evidence in the record. We disagree.

[13] Even if we were to assume, arguendo, that the plaintiff has preserved this issue, it could not prevail. We agree with the plaintiff that these memoranda were not protected by the attorney-client privilege. We have held that " 'communications to an attorney for a public agency are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence.' [*Shew* v. *Freedom of Information Commission*, 44 Conn. App. 611, 620–21, 691 A.2d 29 (1997)]." *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 159, 714 A.2d 664 (1998). Our in camera review of the memoranda in question here reveals that they were not communications to an attorney for a public agency for the purpose of seeking legal advice. The attorney-client privilege protects only those disclosures that are necessary to obtain informed legal advice. See id., 157. The privilege does not protect against the disclosure of underlying factual information. See *Upjohn Co.* v. *United States*, 449 U.S. 383, 395–96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The memoranda were written by department officials to department counsel and labeled at the top "CONFIDENTIAL—ATTORNEY CLIENT PRIVILEGE," but were not created for the purpose of obtaining legal advice. The memoranda conveyed factual information regarding captioned topics such as "Site Location," "Nature of Problem," "Date of Discovery," "Action Proposed," "Justification for Proposed Action," "Relief Sought," and "Anticipated Controversy." Because no legal advice was sought, these memoranda should not have been protected by the attorney-client privilege. Furthermore, there is nothing in those documents that would have been helpful to the plaintiff's claim.

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259, 673 A.2d 101 (1996); *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994). Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, [supra, 200 Conn. 496]; *Connecticut Natural Gas Corp.* v. *Public Utilities Control Authority*, 183 Conn. 128, 134, 439 A.2d 282 (1981). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Perkins* v. *Freedom of Information Commission*, [228 Conn. 158, 164, 635 A.2d 783 (1993)]; *New Haven* v. *Freedom of Information Commission*, [supra, 205 Conn. 773].

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . *Connecticut Building Wrecking Co.* v. *Carothers*, [supra, 218 Conn. 593]; *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 57, 591 A.2d 1231 (1991). The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States

Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . *Dufraine* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 260; see *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 593." (Internal quotation marks omitted.) *Dolgner* v. *Alander*, 237 Conn. 272, 280–82, 676 A.2d 865 (1996).

The trial court properly affirmed the hearing officer's findings that there was substantial evidence in the record that significant sources of soil, groundwater and solid waste pollution existed on the plaintiff's property. The plaintiff did not offer any evidence to contradict these findings. Furthermore, the trial court properly affirmed the hearing officer's decision that the plaintiff failed to prove that the department had engaged in selective enforcement. There was no evidence in the record to suggest that the department acted arbitrarily or abused its discretion in issuing an abatement order to the plaintiff in order to remedy the pollution on the property.

The judgment is affirmed.

In this opinion NORCOTT and PALMER, Js., concurred.

MCDONALD, C. J., with whom SULLIVAN, J., joins, dissenting. I disagree with the majority's conclusion that the trial court properly affirmed the hearing officer's decision that the plaintiff alone must clean up a property that the defendants knew was polluted by a third party with connections to the defendants. I would reverse the judgment of the trial court.

The plaintiff argues that the defendants engaged in selective enforcement because another potentially responsible party, Benjamin Schilberg, had admitted to the defendants in writing that he was responsible for polluting a portion of the site but had not been the subject of any enforcement action under General Statutes § 22a-225.[1] In the majority's view, the plaintiff, to prove selective enforcement, should be compared with "similarly situated current owners of the property who were not directly responsible for the pollution," not with others who were, in fact, responsible for polluting the property. "[E]qual protection [however] does not just mean treating identically situated persons identically. . . . [Rather], the requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all *relevant aspects* were treated differently . . . ." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 402, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). The "relevant aspects" include "whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Klinger* v. *Dept. of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). Section 22a-225 (a) provides that abatement orders may be issued to "any person who violates any provision of this chapter," not only to current property owners. Accordingly, I believe that, for purposes of liability under § 22a-225, the appropriate comparison is to all others that are potentially responsible parties under § 22a-225, and not to only other current owners of the property. I would conclude that Schilberg was

---

[1] General Statutes § 22a-225 (a) provides for the issuance of abatement orders to "any person who violates any provision of this chapter or any regulation adopted or permit issued pursuant to this chapter, or to the owner of any land on which the violation occurs regardless of whether the owner of the land participated in the violation. . . ."

similarly situated to the plaintiff under § 22a-225 for purposes of the challenged government action, the order requiring the cleanup of the property.

The majority also concludes that the plaintiff failed to prove that the defendants' action against the plaintiff was motivated by a malicious or bad faith intent to injure. The plaintiff's argument, however, is not that the defendants were motivated by malice or bad faith to injure, but rather that the government action was based upon an arbitrary classification. In *Oyler* v. *Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962), the United State Supreme Court expressly stated that a party may establish a federal constitutional violation under a claim of selective enforcement in violation of equal protection if "the selection was deliberately based upon an unjustifiable standard such as race, religion, *or other arbitrary classification.*" (Emphasis added.) See also *United States* v. *Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996); *LeClair* v. *Saunders*, 627 F.2d 606, 611 (2d Cir. 1980). The plaintiff's claim is that the defendants' decision not to pursue Schilberg was motivated by political bias. In 1994, Schilberg's son was appointed by the commissioner of the department of environmental protection as a member of the underground storage tank petroleum cleanup account review board. As a member of the board, he was well acquainted with many of the high ranking members of that department.

Admittedly, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation"; *Oyler* v. *Boles*, supra, 368 U.S. 456; nor is it contrary to the department's authority under § 22a-225. However, it "should not extend to the point where [the government] may operate with unbridled discretion . . . by whim or caprice." *LeClair* v. *Saunders*, supra, 627 F.2d 608–609. "[T]he administration of laws 'with an evil eye and an unequal hand, so as practically to

make unjust and illegal discrimination between persons in similar circumstances' constitutes a denial of equal protection." *United States* v. *Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974).

The importance of preventing impropriety and *the appearance of impropriety* in any government action concerning one's property rights cannot be overstated. "Democracy works 'only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption.' *United States* v. *Mississippi Valley Generating Co.*, 364 U.S. 520, 562, 81 S. Ct. 294, 5 L. Ed. 2d 268 (1961)." *Nixon* v. *Shrink Missouri Government PAC*, 528 U.S. 377, 390, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2000). "Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations . . . ." *United States* v. *Berrios*, supra, 501 F.2d 1209.

In *Low* v. *Madison*, 135 Conn. 1, 10, 60 A.2d 774 (1948), this court held that the action of the Madison zoning commission in effect granting a zone change application was invalid because of the relationship that existed between the zoning applicant and a member of the zoning commission.[2] The court reasoned that "[z]oning restrictions limit the individual's free use of his real estate in the interest of the general public good. The administration of power of that nature, whether it be denominated legislative or quasi-judicial, demands the highest public confidence. Anything which tends to weaken such confidence and to undermine the sense

---

[2] A member of the zoning commission, who was the husband of the applicant, "assumed the dual role of public officer, as a member of the commission, and agent or advocate of his wife's private interest in the application before the commission. After conducting his role as advocate, he assumed his role as public official and, by his vote, made it possible to secure the relief he had advocated." *Low* v. *Madison*, supra, 135 Conn. 9.

of security for individual rights which the citizen is entitled to feel is against public policy." Id., 9. As explained in cases interpreting *Low*, the appearance of impropriety sufficiently weakens the respect and confidence in government that is so vital to our system of democracy. See *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, 192 Conn. 638, 648, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984) (test not whether personal interest does conflict, but whether reasonably might conflict); *Thorne* v. *Zoning Commission*, 178 Conn. 198, 205, 423 A.2d 861 (1979) (same); *Josephson* v. *Planning Board*, 151 Conn. 489, 493–95, 199 A.2d 690 (1964) (same). We also have held that "the principles of law stated [in *Low*] are not restricted solely to [planning or zoning] boards. These criteria and principles of law apply to the exercise of powers of all municipal agencies and boards which affect property rights in the community." *Stocker* v. *Waterbury*, 154 Conn. 446, 453–54, 226 A.2d 514 (1967). I see no reason why state government action in this case should not be held to the same standard.

In this case, the defendants obtained, in 1992, a signed admission from Schilberg, a prior lessee, in which he acknowledged that he had burned insulated copper wire on a one-quarter acre area of the site. The portion of the property that Schilberg acknowledged having polluted was one of two contaminated areas on the property. Despite having an admission from Schilberg that he actually had polluted the land, which one department analyst testified was very "rare," the defendants never pursued any remediation or initiated an enforcement action against him.[3] The defendants cited a lack of

---

[3] In 1993, the defendants also did not pursue any action with respect to the owner of the land at that time, Ashford Development Corporation (Ashford). Ashford was responsible for the contamination on a second area of the site on which it demolished and disposed of burned debris that remained from a fire on the property.

resources as the reason for their inaction in the past. It was not until 1997, after the plaintiff had purchased the property, that the defendants pursued an enforcement action under § 22a-225 against only the plaintiff. The defendants claim that pursuing more than one party would have "complicate[d] the administrative process," and would have frustrated their primary goal, which was to have the entire site cleaned up. They argue that, because Schilberg was responsible for only one of the two contaminated areas, they decided to pursue the plaintiff alone in order to avoid delays in the enforcement process that would have resulted from the parties disputing the allocation of cleanup costs. The defendants concede, however, that allocation of liability is irrelevant because the parties are jointly and severally liable under § 22a-225. Consequently, the defendants patently failed to address why they never took any action against Schilberg after obtaining his admission, but instead pursued the plaintiff alone for the cost of cleanup.

Moreover, the commissioner's appointment of Schilberg's son to an advisory board raises the specter of favorable treatment of a known polluter with a relationship to the department at the expense of a nonpolluter without such a relationship. This is certainly not a situation that inspires public confidence in the even-handed administration of government. As we stated in *Thomas*, "equal protection does not just mean treating identically situated persons identically. If a bad person is treated better than a good person, this is just as much an example of unequal treatment as when a bad person is treated better than an equally bad person or a good person worse than an equally good person." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, supra, 249 Conn. 401, quoting *Esmail* v. *Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). It is, to me, inescapable that a property owner's confidence in the administration of government

power over that owner's property would be undermined in these circumstances.

Accordingly, I respectfully dissent.