[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Plaintiff Eleven High Street, Inc. appeals the decision of the defendant zoning board of appeals of the Town of Suffield, which affirmed a cease and desist order issued by the Suffield zoning enforcement officer. The board's decision was issued pursuant to Conn. Gen. Stats. sec. 8-6. The plaintiff appeals pursuant to section 8-8. The court finds in favor of the defendant board.
Just prior to oral argument on this appeal, the defendant board filed a motion to dismiss, contending that the plaintiff is a foreign corporation and has not obtained a certificate of authority to transact business in Connecticut. Therefore, the board argues, the plaintiff is not entitled to maintain this appeal, citing Conn. Gen. Stats. sec. 33-921 (a).
The court held a hearing on the motion, at which, Bryan Glynn, the CT Page 15687 president of the plaintiff corporation testified, and presented other evidence. Based on the evidence adduced at the hearing, the court finds the following facts: The plaintiff is a Florida corporation. It owns the property that is the subject of this appeal, as well as other real estate in Florida. The plaintiff acquired the Suffield property by quitclaim deed from Glynn, acting in his individual capacity, on May 6, 1996. The plaintiff thereafter leased space in the property to other businesses and it continues to do so, but it conducts no other business in Connecticut.
In 1996, the Connecticut Stock Corporation Act was the relevant statutory authority governing the activities of foreign business corporations. That act provided that merely owning and leasing real estate in Connecticut did not constitute "transacting business" in the state. That Act thereby exempted the plaintiff from the requirement of obtaining a certificate of authority. See Conn. Gen. Stats. sec. 33-397 (Rev. 1996). Sec. 33-997 of the General Statutes, being part of the current Business Corporation Act, which replaced the Stock Corporation Act effective January 1, 1997, contains a savings clause, preserving "any . . . right (or) privilege . . . acquired (or) accrued" under the prior act. The court concludes that section 33-997 of the current Business Corporation Act preserves the right of the plaintiff to own and lease the real property in question without obtaining a certificate of authority. It follows that the plaintiff corporation may maintain this and other court proceedings without obtaining such certificate. The motion to dismiss the appeal is, therefore, denied.
Most of the facts essential to the court's decision on the appeal are not in dispute and are fully reflected in the record. Disputed facts will be noted where applicable. The plaintiff owns the subject property, a building located at 11 High Street in Suffield. Although the use of the building is primarily commercial, the plaintiff has maintained a residential apartment in the building for several years, which has been occupied by a caretaker. The property is located in a C-2 commercial zone. A single dwelling unit in a zone C-2 building is a permitted accessory use that requires site plan approval.
In May 1997, the zoning enforcement officer ordered the plaintiff to cease and desist the use of the subject property as a residential dwelling. The plaintiff appealed that order to the board, which the board, after a hearing, affirmed. The plaintiff appealed the board's decision to this court, which sustained the appeal on the ground that notice of the public hearing was defective. The court remanded the case to the board for a new hearing and decision. The board never convened a new hearing, however, and the plaintiff's appeal of the ZEO's 1997 cease and desist order remains in limbo. CT Page 15688
On February 7, 2000, the ZEO issued a second cease and desist order, again citing the plaintiff for the establishment and use of a dwelling unit in the building without site plan approval, in violation of § 4.22.9 of the Suffield zoning regulations. The plaintiff appealed the issuance of that cease and desist order to the board.
The board conducted a public hearing on the appeal of the May 7, 2000, cease and desist order on May 30, 2000. Following the testimony of several witnesses, including James Taylor, the ZEO; Brian Glynn, the president of the plaintiff corporation; Paul Kulas, former Suffield first selectman; and Mr. Seger, the carpenter who originally renovated the residential unit, the board closed the public hearing and began deliberating. Deliberations were continued to June 27, 2000, so that board members could "seek further information." (Return of Record, Transcript, 5/30/00, pp. 122-23.)
On June 27, 2000, the board continued its deliberations, and, after some discussion, voted to affirm the cease and desist order. In its published notice of decision, the board stated its reason as "because a lack of evidence was presented that a site plan for any apartment at 11 High St. was approved." It is this decision that is the subject of the appeal presently before this court.
Based on evidence presented at the hearing on this appeal, the court finds that the plaintiff is the owner of the property in question and is, therefore, aggrieved by the board's decision.
The plaintiff advances essentially four arguments in support of its appeal: (1) that notice of the public hearing was inadequate; (2) that there is no substantial evidence in the record to support the board's decision; (3) that the defendant illegally received evidence after the close of the public hearing; and (4) that the defendant should be estopped from enforcing the zoning regulations as they pertain to the cease and desist order.
 Notice of Hearing
General Statutes sec. 8-7, provides, in relevant part, that the "board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing."
The public hearing in this case was held on May 30, 2000. There is CT Page 15689 evidence in the record that prior notice thereof was published in the "Journal Inquirer" on May 19 and May 26, 2000, in compliance with the statute. As further evidence that the plaintiff had actual notice, the record establishes that Mr. Glynn, the plaintiff's president, and Attorney John M. Wyzik, the plaintiff's attorney, attended the hearing and participated actively in it. The plaintiff's argument that notice was inadequate is without merit.
 Sufficiency of the Evidence
As noted, the zoning enforcement officer issued the cease and desist order on the basis of his finding of the "establishment and use of a dwelling unit without site plan approval," in violation of the applicable regulation. The factual issue before the board on appeal, therefore, was whether the plaintiff or any predecessor had ever obtained such approval.
The court has carefully reviewed the entire record. There is no documentary or other conclusive evidence that a site plan including a dwelling unit was ever approved for the plaintiff's building; indeed, there is no direct evidence that any site plan which included a dwelling unit was ever presented to the planning and zoning commission for approval. What there is in the record is a mass of testimony and evidence which could reasonably support either of two contradictory inferences; that is an inference that such approval either was or was not granted.
At the public hearing, James Taylor, the Suffield ZEO, testified that he searched the building department records and the zoning commission records and could find no evidence of an approved site plan which included an apartment. Indeed, no approved site plan document, with or without an apartment, was ever introduced into the record, and it seems clear that neither the original nor any copies can be found. Taylor did testify, however, that the zoning commission records indicate that a site plan for the building was approved on September 19, 1983, although the details of the site plan are not indicated and the document itself is missing. Town records do contain a certificate of occupancy issued for offices and a garage in 1985, and a copy of plans for the second and third floors of the building. None of these documents show or mention a dwelling unit.
Glynn, the plaintiff's president, testified that he applied for a permit to expand the subject property in 1983. The conversion of the second and third floors of the building into an apartment was completed in 1985. In 1985, Glynn stated he was issued a temporary certificate of occupancy, which he states, was converted to a certificate of occupancy thirty days later. Glynn contends that that certificate of occupancy CT Page 15690 included approval for the apartment, although he did not produce a copy of the certificate of occupancy. Glynn testified that Fleet Bank appraised the property in 1992, which included the apartment, but the appraisal document was not produced at the hearing.
Brian Glynn, Jr., Glynn's son, John Flanders, the son's former tutor, and Paul Kulas, former Suffield first selectman, testified that the second and third floors of the building had the appearance of a residential dwelling since approximately the mid-1980s. Kulas also testified that he was aware of a conversation in which a former Suffield ZEO stated that he either saw or gave approval for the apartment. The former ZEO did not testify at the hearing.
The record demonstrates that on October 7, 1983, Glynn applied for a permit, number 11732, to build a garage and for the addition of offices on the subject property. On the second page of the permit, under the heading "occupancy," the block designating "offices" is checked, but the block for "apartments" is not checked. Additionally, "renovate offices" is noted under the remarks section.
In summary, there was evidence that the creation of the dwelling unit in the building commenced sometime shortly after 1983, the year that a site plan was approved. Although that site plan was never produced in the record, none of the other documents relating to the building's renovation that were produced show any indication that a dwelling unit had been approved by any town official. Indeed these documents, as noted; conspicuously omit any indication that a dwelling unit was to be created in the building. The plaintiff argues that the undisputed existence of the dwelling unit over a period of many years with the knowledge of many different town officials reasonably supports the inference that the missing site plan, which was approved in 1983, included the apartment.
A basic principle of administrative law is that the scope of the court's review of a decision by an administrative agency, such as the board, is very limited. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic facts and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) CadlerockProperties Joint Venture, L.P. v. Commissioner of Env. Protection,253 Conn. 661, 676, 757 A.2d 1 (2000).
"In challenging an administrative agency action, the plaintiff has the CT Page 15691 burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. . . . [T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587 (1993).
"[T]he reviewing court must sustain the agency's determination if an examination of the record discloses (substantial) evidence that support any one of the reasons given . . . [T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Id. 587-588.
Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties Joint Venture, LPv. Commissioner, supra, 253 Conn. 677.
These familiar principles of our law present a formidable obstacle to the overturning by the court of the factual findings and conclusions of an administrative agency such as the defendant board.
In the court's view, the evidence before the board as set forth in the record and summarized above, was substantial and sufficient, therefore, to support its finding that no site plan containing a dwelling unit was ever approved. of course, the evidence might equally support a different finding, but it was the board's responsibility to make the ultimate factual determination. Accordingly, the plaintiff's contention in this regard may not be sustained.
 Ex Parte Evidence
As noted, at the close of the board's meeting on May 30, 2000, the members determined that they should "seek further information" and continued their consideration of the appeal until June 27, 2000. They reconvened the meeting on that latter date and reported the results of their investigations. The court has reviewed the record of the June 27 meeting and concludes that the ex parte investigations resulted in no prejudice to the plaintiff.
As shown by the transcript of the June 27 meeting, board members Donnelly and Rago inspected the records of the town fire marshall and reported that they contained no evidence of an approved site plan for a dwelling unit. Board Chairman Schulte reported that he spoke to the CT Page 15692 chairman of the planning and zoning commission, Dr. Viets, who stated that he was not a member of the commission when the site plan was approved and, therefore, "didn't have anything to add."
"An administrative agency should not consider evidence submitted after the public hearing is closed without giving opponents an opportunity to inspect and question it and offer evidence in rebuttal. . . . Illegal receipt and consideration of evidence submitted after the public hearing by the agency can invalidate its action." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 47.4, p. 444; see also Blaker v. Planning and Zoning Commission, 212 Conn. 471, 478-80,562 A.2d 1093 (1989). To this desirable rule there is an obvious exception. "[T]he use of improper evidence requires a remand only if a party has affirmatively shown substantial prejudice. . . ." ConnecticutNatural Gas Corporation v. Public Utilities Control Authority,183 Conn. 128, 139 (1981). Although it was plainly improper for board members to interview another town official ex parte about an issue that had been raised at a public hearing and that was presently before the board for a factual determination, the plaintiff has not shown how it could possibly have been prejudiced in this case. The person whom the members contacted had no relevant information, and the board members explicitly stated that they were not relying on anything he said. Furthermore, although the board members learned that fire marshall records indicated that the building passed fire inspections while it contained a dwelling unit, there was no indication in those records whether there had ever been an approved site plan showing the dwelling unit. Presumably, the fire marshall records have always been as available to the plaintiff as they were to the board members. In any event, nothing in the record indicates that there is anything in the fire marshall's file concerning the precise issue that the board had to decide — that is, whether an approved site plan for the dwelling unit existed — nor has the plaintiff pointed to anything in those files that is prejudicial to its contentions. The court concludes that the plaintiff's arguments regarding ex parte activities on the part of the board may not be sustained.
 Estoppel
The plaintiff argues that the defendant should be estopped from enforcing the zoning regulations pertaining to the permitted accessory use of the apartment because the town building inspector issued a certificate of occupancy authorizing such a use after inspecting the renovations including the dwelling unit. The plaintiff further argues that it would be "highly oppressive" to enforce zoning regulations for a use that has existed since 1985. CT Page 15693
"[I]n special circumstances, a municipality may be estopped from enforcing its zoning regulations." Dornfried v. October Twenty-Four,Inc., 230 Conn. 622, 634, 646 A.2d 772 (1994). The party asserting the defense of estoppel bears the burden of proof. Zeigler v. Thomaston,43 Conn. Sup. 373, 383, 654 A.2d 392 (1994), aff'd 232 Conn. 270,654 A.2d 352 (1995). Estoppel "may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations."Dornfried v. October Twenty-Four, Inc., supra, 635.
In the present case, the plaintiff has not sustained its burden of proving that any agent of the planning and zoning commission unjustifiably induced the plaintiff to proceed to construct a dwelling unit without obtaining the required site plan approval from the commission. Nor has the plaintiff sustained its burden of proving that enforcement of the regulation requiring site plan approval would be highly oppressive or would subject the plaintiff to great loss. In this regard, there was no evidence that the plaintiff has ever applied for a site plan including the dwelling unit, so there is no reason to believe that it could not do so now and simply comply with the regulations.
For all of the reasons set forth above, the court concludes that the board did not act unreasonably, illegally, or in abuse of its discretion. The plaintiff's appeal is, therefore, dismissed.
Maloney. J.