[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
 I. Statement of Case
The plaintiff, Vincente Morel, appeals from the August 18, 2000 final decision (Decision) of the defendant, the Connecticut Department of Public Health (Department), disqualifying the plaintiff from participating as a vendor in the Connecticut Special Supplemental Nutrition Program for Women, Infants and Children (WIC program). This appeal is brought pursuant to General Statutes § 4-183.
 II. Procedural History
The plaintiff owns a food store in Bridgeport, Connecticut known as Juncos Market and was a licensed vendor under the WIC program. The WIC program is a supplemental food program for women, infants and children "which is administered by the [d]epartment of [p]ublic [h]ealth in accordance with the United States Department of Agriculture regulations,7 C.F.R. § 246.1 through 246.28, as amended." Regs., Conn. State Agencies § 19a-59c-1 (ccc). As a vendor, the plaintiff was authorized by the state to provide approved food items to WIC participants in CT Page 7685 exchange for WIC vouchers.
The plaintiff was notified by letter dated December 27, 1999 of his disqualification from participation in the WIC program "for three years . . . due to . . . WIC program violations . . ." and assessed a $500.00 fine (Return of Record [ROR], Vol. I, p. 13, Exhibit 1.) The notice informed the plaintiff that the basis of the violation stemmed in relevant part from compliance purchases performed on November 20, 1998, September 25, 1999, and September 29, 1999 (ROR Vol. I, pp. 13-15, Exhibit 1.)
The plaintiff filed a request for a fair hearing dated December 30, 1999 and a request for stay of the disqualification dated January 11, 2000 (ROR, Vol. I, pp. 17 and 19, Exhibits 2 and 4.) The request for stay was granted (ROR, Vol. I, p. 20, Exhibit 5.) An evidentiary hearing was held before a fair hearing officer (FHO) on February 7, 2000 and April 3, 2000 (ROR, Vols. II and III.) The plaintiff objected to the admission into evidence of the November 20, 1998 compliance purchase report on the basis that the whereabouts of the undercover investigator who made the compliance purchases and authored the report were unknown (ROR, Vol. II, pp. 4-5.) The FHO overruled the objection and admitted the November 20, 1998 compliance purchase report (ROR, Vol. II, p. 5.) A final memorandum of decision dated August 18, 2000 was issued by the defendant adopting the FHO's proposed memorandum of decision dated June 6, 2000 (ROR, Vol. I, pp. 1-12.) In the final decision, the defendant found that numerous WIC program violations occurred during the undercover compliance purchases on the three dates in question (ROR, Vol. I, p. 9.) The defendant imposed upon the plaintiff a three year period of disqualification from WIC vendor participation and a fine. The plaintiff appeals, challenging several aspects of the August 18, 2000 final decision.
 III. Jurisdiction
A. Aggrievement
General Statutes § 4-183 (a) provides in relevant part that "[a] person . . . who is aggrieved by a final decision may appeal to the Superior Court. . . ." "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987).
In the present matter, the defendant disqualified the plaintiff as a CT Page 7686 vendor in the WIC program. The defendants in this appeal have not challenged aggrievement. Thus, this court finds that the plaintiff is aggrieved.
E. Timeliness of Appeal
General Statutes § 4-183 (c) provides, in relevant part: "Within forty-five days after mailing of the final decision under § 4-180. . . a person appealing . . . shall serve a copy of the appeal on the agency that rendered the final decision . . . and file the appeal with the clerk of the superior court. . . ."
The final decision was mailed on August 18, 2000 (ROR, Vol. I, p. 3.) The plaintiff filed the appeal with the superior court, judicial district of New Britain on August 28, 2000. The defendant has not raised a jurisdictional defect. Thus, this court finds the appeal to be timely.
 IV. Standard of Review
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted. . . ." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties v. Commissioner,253 Conn. 661, 668, cert denied, ___ U.S. ___, 121 S.Ct. 1089,148 L.Ed.2d 963 (2001). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, CT Page 7687 illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [S]ubstantial evidence . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ."
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 669.
Further, the court must search the entire record to determine whether substantial evidence exists to support the agency's findings of fact, and whether the conclusions drawn from those facts are reasonable. Dolgnerv. Alander, 237 Conn. 272, 283 (1996).
 Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts
found and could reasonably and logically follow from such facts. (Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 669.
 V. Discussion
CT Page 7688
The plaintiff in his October 16, 2000 brief raised three claims of administrative error: (1) the November 20, 1998 compliance purchase report was improperly admitted into evidence; (2) the imposition of an automatic three year penalty for a Class A violation is contrary to federal regulations governing vendor abuse; and (3) an adverse inference should have been drawn from the failure of the defendant to produce evidence.
1. The Claim that the November 20, 1998 Compliance Purchase Report was Improperly Admitted into Evidence
The plaintiff challenges the admission of a November 20, 1998 WIC program vendor compliance purchase report allegedly written by a person named Monica Martinez. (Plaintiff's October 16, 2000 Brief, pp. 4-5; ROR, pp. 63-66, Exhibit 7.) Martinez had formerly been employed by The Center for Research and Public Policy, which contracted with the defendant to provide undercover vendor compliance investigative services. (ROR, Vol. I, p. 94, Exhibit R-3.) The plaintiff contends that the only evidence presented in support of the November 20, 1998 violation was inadmissible hearsay. "In the instant case the report of Monica Martinez was not under oath or witnessed. It could have been authenticated in this manner but it was not. The facts contained in her report are not verified by any other documentary evidence such as a cash register receipt. In addition the report of Monica Martinez was over one year old and Mrs. Martinez was long gone before the Plaintiff was even notified of the allegations in her report." (Plaintiff's October 16, 2000 Brief, p. 4.) Finally, the plaintiff contends that the basic tenants of due process of law were violated through the admission of the report. (Plaintiff's October 16, 2000 Brief, p. 5.)
The defendant responds in part by arguing that "[p]laintiff is also incorrect in his characterization of the investigation reports as hearsay. As a preliminary matter, it is well established that hearsay is admissible in administrative matters. Conn. Gen. Stat. § 4-178. However, these reports are not hearsay because they are business records pursuant to Connecticut General Statute § 52-180. . . . [T]he investigation was undertaken pursuant to enforcement of the WIC program, and the record of the event was made just five (5) minutes after the visit. It was made in the regular course of business. The reports are therefore business records and not subject to the general rule excluding hearsay evidence. In this particular case, plaintiff had an opportunity to inspect the report and to cross examine the writer of two of the three reports." (Defendant's December 15, 2000 Brief, pp. 16-17.)
The defendant notified the plaintiff through letter dated December 27, CT Page 7689 1999 that his store had been barred from participation in the WIC program for three years as a result of violations discussed during "[c]ompliance purchases performed on November 20, 1998. . . . September 25, 1999 and September 29, 1999, by a designee of the Connecticut WIC Program. . . ." (ROR, Vol. I, p. 13, Exhibit 1.) Thereafter, in the January 25, 2000 notice of hearing, the plaintiff was instructed that "[i]t is your obligation to call any person you desire as a witness. This includes any WIC Vendor Monitors and/or Compliance Investigators." (ROR, Vol. I, p. 24, Exhibit 7.) Additionally, the plaintiff was informed that the administrative record would include the "Compliance Purchase Report dated November 20, 1998." (ROR, Vol. I, p. 25, Exhibit 7.)
Monica Martinez was named as the author of the November 20, 1998 compliance purchase report (ROR, Vol. I, pp. 63-65, Exhibit 7.) A review of the report discloses that it purports to chronicle numerous violations of the WIC vendor program occurring during an undercover buy at the market on the aforementioned date. (ROR, Vol. I, pp. 63-65, Exhibit 7.)
In accordance with the defendant's instructions, the plaintiff attempted unsuccessfully to compel Martimez's attendance at the February 7, 2000 hearing by subpoena (ROR, Vol. I, pp. 91-92, Exhibit R-2.) The process server's return states: "I made several attempts to locate and make personal service upon the within named: MONICA MARTINEZ, but was unable to locate her. Monica according to her supervisor Michael Viglant she moved out of state (sic). Therefore I hereby return this Subpoena Duces Tecum Un-Served." (ROR, Vol. I, p. 90, Exhibit R-1.)
The first day of the administrative hearing was February 7, 2000. (ROR, Vol. II.) The FHO began the proceedings by introducing into evidence numerous documents which included the November 20, 1998 compliance purchase report. (ROR, Vol. II, p. 4.) The plaintiff's attorney objected to the admission of the report. He stated in part:
I would ask that they not be admitted into evidence unless the people are available and here to testify regarding them. And I will note . . . that I did attempt to subpoena one of the authors of one of the undercover reports, a woman named Monica Martinez. And based on the information I received from the Department regarding her most likely location, it turns out she is no longer there at that Center for Policy and Research in New Haven. And my sheriff advises me that this Monica Martinez has moved out of state. Therefore, she would be, at least for the purposes of this hearing, unavailable to me. And I would ask that any documents offered by her would not CT Page 7690 be admitted at this time or that this hearing be continued until sufficient time until either myself or the Commissioner can apply to a court of competent jurisdiction in Connecticut to get a subpoena for her, which we could enforce under the full faith and credit act in an adjoining state, wherever that may be, assuming that we could locate her. Failing that, I would ask that the reports that she offered no be admitted into evidence."
(ROR, Vol. II, p. 4-5.)
The FHO responded, "I'm going to overrule the objection, and I'm going to enter the reports." (ROR, Vol. II, p. 5.)
Following the admission of the report, the FHO inquired whether plaintiff's counsel was "currently undertaking any efforts to further attempt to locate her whereabouts", to which plaintiff's counsel responded "I have asked the sheriff to attempt to find any more information he can regarding her. He indicated he did not get much information from her former employer, other than she had moved out of state. I do not have a date of birth or social security number. If I had that, I could possibly locate her, but there's certainly no guarantee. I don't even know if she's still in the United States, quite frankly." (ROR, Vol. II, p. 5-6.)
Thus, the record reveals that the November 20, 1998 report was introduced over the plaintiff's objections, in the absence of Martinez, and without authentication or qualification as a business record. General Statutes § 52-180. The report was admitted for the truth of the matters asserted therein.
The FHO then agreed to hold the record open until March 16, 2000 to permit additional time for plaintiff's counsel to locate Martinez. Plaintiffs counsel continued his efforts to locate Martinez and contacted Martimez's former employer. (ROR, Vol. II, p. 10.) Through letter dated March 13, 2000, Michael Vigeant, Project Director for the Center for Research and Public Policy notified plaintiff's counsel that "Miss Martinez no longer works for The Center for Research Public Policy and in addition, she has moved out of state. I do not have a forwarding address or phone number for her." (ROR, Vol. I, p. 94, Exhibit R-3.) This letter was brought to the attention of the FHO on the second day of evidence, April 3, 2000, and admitted as an exhibit. (ROR, Vol. III, p. 10; ROR, Vol. I, p. 94, Exhibit R-3.)
The plaintiff called as a witness Ana Severino, who testified that she CT Page 7691 worked at Juncos Market in 1998 but was not present on November 20, 1998. (ROR, Vol. III, p. 13.) Severino indicated, however, that "she knows exactly who was [working] there, but she doesn't know where they are." (ROR, Vol. III, p. 14.) The November 20, 1998 purchase compliance report under the subsection "physical description of cashier" describes this individual as a "female" with "sandy blonde" hair "with streaks". The report identified the cashier's approximate age as 35, approximate height as 5 feet, 5 inches tall, and approximate weight as 140 pounds. In response to a request for "other identifying information" the report notes the cashier had a "[q]uiet voice. Hair is short, below the ears and curly." (ROR, Vol. I, p. 65, Exhibit 7.) The FHO utilized this information in an obvious attempt to corroborate and verify the accuracy of the report. He inquired of the witness, "Tell her, I have a report from the previous witness describing that day's events. And they describe the cashier as someone as a female around 140 pounds with sandy blonde hair with streaks, around 35 years old, approximately 5 feet 5 inches tall, quiet voice, short hair below the ears and curly. Would she know who that would be?" (ROR, Vol. III, p. 16.) Severino responded to this inquiry "[n]o."[1] (ROR, Vol. III, p. 16.)
On April 3, 2000, at the conclusion of the evidence, plaintiff's counsel again discussed Martinez and the November 20, 1998 report. He stated, "I do not know her whereabouts. And my clients do not know the whereabouts-current whereabouts of the employee who would have been involved, who could have testified. And that the admission of that report is substantially prejudicial to my client, because we're totally barred by the passage of time and the movement of these people from defending against that." (ROR, Vol. III, pp. 28-29.) Counsel requested that the Commissioner use his "superior powers to track these people down, and exercise his discretion as to whether or not that, in fact, would be futile act, because I would like to have those people available to testify in this case." (ROR, Vol. III, p. 32.) The FHO responded by stating "I'm going to deny both the request to continue this hearing, and the request that the Commissioner either issue or attempt to issue the subpoenas." (ROR, Vol. III, p. 32.)
The FHO made the following relevant findings:
 2. On November 20, 1998, Monica Martinez, a WIC investigator, performed a compliance purchase investigation at the store. H.O. Exh. 7.[2]
4. During the November 20, 1998 investigation, Ms. Martinez purchased one dozen eggs and one 16 oz. bottle of grapefruit juice. Only the dozen eggs was an approved WIC food item. H.O. Exh. 7. CT Page 7692
 5. In making this purchase, Ms. Martinez presented a WIC voucher for one dozen eggs and one 16 oz. container of peanut butter. H.O. Exh. 7.
 6. The voucher that was submitted for the November 20, 1998 purchase charged the WIC program $4.38. The actual cost of the eggs and grapefruit juice was $2.49. Thus, the WIC Program was charged more for WIC foods than the lesser of the shelf or sale price at the time of purchase. H.O. Exh. 7.
 7. Appellant's clerk was the person who was working at the store during the compliance purchase on November 20, 1998 and personally handled the transaction. H.O. Exh. 7; Tr. 4/3/00, p. 14.[3]
(ROR, Vol. I, p. 7)
The FHO then made the following relevant comments in the conclusions of law and discussion portion of the decision. "During the compliance purchases of November 20, 1998, September 25, 1999 and September 29, 1999, appellant's employees did not comply with these requirements, as set forth in the factual findings. The November 20, 1998, September 25, 1999 and September 29, 1999 compliance purchase reports, the latter two of which were adopted on the record by the investigator, are reliable and probative evidence of violations of the Regulations and the WIC Vendor Agreement." (ROR, Vol. I, p. 9.) The FHO imposed a penalty of a three year disqualification and monetary fine. (ROR, Vol. I, pp. 10, 11.)
The Regulations of the Department of Public Health contain hearing procedures for contested cases. In relevant part they provide, "[t]he rules of evidence shall be as prescribed in section 4-178 of the Connecticut General Statutes." Regs. Conn. State Agencies § 19a-9-24. General Statutes § 4-178 provides in part "[i]n contested cases: (1) Any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence; . . . (3) when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form. . . ."
The plaintiff contends that he is substantially prejudiced by the admission of the November 20, 1998 compliance purchase report because it is unreliable hearsay and the exclusive source of evidence utilized to establish WIC violations on that date. In this regard "[t]he plaintiff CT Page 7693 bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Citations omitted; internal quotation marks omitted) Paquette v. Hadley,45 Conn. App. 577, 580 (1997). "Hearsay [evidence] is and out-of-court statement offered into evidence to establish the truth of the matters contained therein." (Citations omitted; internal quotation marks omitted)Labenski v. Goldberg, 33 Conn. App. 727, 733 (1994). There is no general prohibition against the admission of hearsay evidence at an administrative proceeding. Rogers v. Board of Education of New Haven, 252 Conn, 753, 766
(2000). Moreover, "evidence in written form is not, as a matter of law, inadmissible in an administrative hearing conducted under General Statutes § 4-178 unless it substantially prejudices a party. The words substantially prejudice as they appear in the statute are to be construed according to commonly approved usage of the language. . . ."Carlson v. Kozlowski, 172 Conn. 263, 266 (1977). (Internal quotation marks omitted).
The defendant found that a Class A violation of WIC program rules occurred on November 20, 1998. It is the duty of this court to search the entire record to ascertain if substantial evidence exists to support the pertinent findings of fact and to determine whether the conclusions drawn from those findings are reasonable. "Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power v. DPUC,219 Conn. 51, 57 (1991).
"If hearsay evidence is insufficiently trustworthy to be considered substantial evidence and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing, which has not been made here, that the appellant knew it would be used and failed to ask the commissioner to subpoena the declarants." (Footnote omitted; Internal quotation marks omitted.) Carlson v. Kozlowski, supra, 172 Conn. 267;Paquette v. Hadley, supra, 45 Conn. App. 581, footnote 9; Labenski v.Goldberg, supra, 33 Conn. App. 734. "We recognize that proceedings before administrative agencies are not bound by strict rules of evidence and procedure but they cannot be conducted so as to violate fundamental rules of justice. . . . Nor may the informalities that are permissible in an administrative hearing be permitted to prejudice the rights of the parties. If this should happen, the court is available to rectify the wrong." (Citations omitted.) Dragan v. Connecticut Medical ExaminingBoard, 24 Conn. App. 662, 667 (1991).
The November 20, 1998 report is hearsay because it was written outside of the administrative hearing and was presented into evidence to CT Page 7694 establish the truth of the statements contained within it. The FHO in his findings of facts and the conclusions relied almost exclusively on the statements in the November 20, 1998 report.[4] The question then becomes whether the report is sufficiently trustworthy to be considered substantial evidence.
The plaintiff was notified prior to the hearing of the defendant's intention to admit the report into evidence. (ROR, Vol. I, pp. 24-25, Exhibit R-7.) In accordance with the defendant's instructions the plaintiff made substantial attempts to locate and compel the testimony of Monica Martinez. (ROR, Vol. I, pp. 90-92 and 94, Exhibits R-7, R-8.) The plaintiff sought the assistance of the defendant by requesting that it utilize its subpoena powers conferred by General Statutes §4-177b.[5] This motion was summarily denied. (ROR, Vol. III, pp. 31-32.)
Although the November 20, 1998 report appears to be in the same format as the September 25, 1999 and September 29, 1999 reports, there was no evidence presented which identified or authenticated the document. It was not qualified as a business record pursuant to General Statutes §52-180. The record does not contain evidence which corroborates the statements contained within the report. In fact, the testimony of Ana Severino regarding the physical description of the sales clerk impeaches the report's credibility. (ROR, Vol. III, p. 16.) The record contains evidence that the clerk who was working in the store on November 20, 1998 is no longer employed by the defendant and her whereabouts are unknown. Efforts to locate her have been unsuccessful. (ROR, Vol. III, pp. 18-20.)
Finally, from an examination of the November 28, 1998 report it cannot be determined whether it is the complete report. Unlike the reports for September 25, 1999 and September 29, 1999, the certification portion of the November 20, 1998 report does not contain the required notation of the total number of pages within it. (ROR, Vol. I, p. 65, Exhibit 7.)
The court finds, based upon its review of the entire record that the November 20, 1998 report is not sufficiently trustworthy to constitute substantial evidence. This report was, with one limited exception, the only evidence relied upon by the FHO to support the pertinent findings of fact. Accordingly, this court must conclude that there is no reliable, probative and substantial evidence in the administrative record to support the agency's conclusion that the WIC program violations occurred on November 20, 1998. The plaintiff has been substantially prejudiced, and the appeal is sustained with respect to this issue.
2. The Claim that the Imposition of an Automatic Three Year Penalty for aCT Page 7695 Class A Violation is Contrary to Federal Regulations Governing Vendor Abuse
The plaintiff contends that the imposition of an automatic three year period of disqualification pursuant to state regulations is contrary to preemptive federal regulations. (See 7 C.F.R. § 246.12k(ii)).[6]
This issue was recently addressed in Nunez v. Garcia, Superior Court, judicial district of New Britain, Docket No. CV 00 0504460S (May 2, 2001, Cohn, J.), and is applicable in the present matter in view of the time period in question, September 1999. The court ruled that "[t]he state regulation in this case does partially conflict with the federal regulation to the extent that it provides for automatic disqualification for Class A violations of the WIC program. The federal statute in effect in 1999 required an exercise of discretion by the hearing officer in setting the penalty. An automatic disqualification is the antithesis of a disqualification that seeks to take into account all the factors that encompassed the violation. The hearing officer in the case before the court specifically imposed the three-year disqualification as an "automatic . . . disqualification, '. . . without any reference to the discretion allowed in the introductory paragraph to state regulation § 19a-59c-6(c)." (Citations to the record omitted; footnote omitted.) Id. pp. 7-8.
This court finds that the defendant must exercise its discretion and reevaluate the penalties for the Class A violations which occurred on September 25, 1999 and September 29, 1999, in accordance with the requirements of 7 C.F.R. § 246.12k (ii). The appeal is sustained on this issue and the case is remanded for the determination of the appropriate penalties.
3. The Claim that an Adverse Inference Should have been Drawn from the Failure of the Defendant to Produce Evidence
The plaintiff contends that "[a] negative inference against the credibility of Ms. Maldonado's testimony should be presumed based upon her failure to produce . . . highly probative evidence which was easily available to her." (Plaintiff's October 16, 2000 Brief, p. 3.) The court finds that this claim lacks merit. It is firmly established law that the "trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . ."Cadlerock Properties v. Commissioner, supra, 253 Conn. 669.
The court finds that the defendant did not act arbitrarily, CT Page 7696 unreasonably or in abuse of its discretion in choosing not to draw an adverse inference. The court finds for the defendant on this issue.
VI. Conclusion
The court finds that substantial rights of the plaintiff have been prejudiced because the final decision of the agency does not comply with the law. The appeal is sustained, judgment is rendered in favor of the plaintiff. Pursuant to General Statutes § 4-183 (j) the matter is remanded to the agency for further proceedings consistent with this opinion.
 BY THE COURT: PETER EMMETT WIES, JUDGE.