[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision I. Statement of Case
The plaintiff, Yamara Ferrer, appeals from the August 2, 2000 final decision of the defendant, Commissioner, Department of Social Services (DSS). In that decision, the defendant denied the plaintiffs application for benefits under the work-related child care program. This appeal is brought pursuant to General Statutes §§ 17b-61 and 4-183.
 II. Procedural History
DSS has been designated as "the lead agency for child day care services in Connecticut." General Statutes § 17b-733. The plaintiff filed an application for child care benefits dated November 29, 1999. (Return of Record, (ROR), pp. 11-16.) The application file was stamped as received on December 4, 1999. (ROR, pp. 12, 14, 16.) Thereafter, the plaintiff was notified by letter dated December 14, 1999, that her application was incomplete. "[We] need a letter from your high school stating that you are a full time student and what your schedule is." (ROR, p. 17.) This notification came from a private business entity known as Maximus which contracts with DSS to administer the Child Care Assistance Program (CCAP). (ROR, p. 17.) The plaintiff was instructed that the deadline for receipt by Maximus of the student verification and schedule materials was December 24, 1999. The failure to submit the materials by that date would result in a denial of the application for benefits. (ROR, p. 17.) Thereafter through letter dated December 29, 1999, Maximus informed the plaintiff her application was denied because "[y]our application was not complete. We sent you a letter to let you know what information was missing. We did not receive this information from you." (ROR, p. 18.)
An administrative hearing was requested by letter dated December 22, 1999[1] and on March 20, 2000, an evidentiary hearing was conducted before a DSS fair hearing officer (FHO), pursuant to General Statutes § 17b-60. (ROR, p. 32). The FHO issued a written decision dated August 2, 2000. (ROR, pp. 1-5.) The decision included both findings of fact and conclusions of law and affirmed the denial of benefits from the CCAP.
The plaintiff commenced this administrative appeal through petition filed on September 15, 2000 in the superior court, judicial district of New Haven and was thereafter transferred to the judicial district of New Britain by order of the court.
 III. Jurisdiction
CT Page 10650
A. Aggrievement
General Statutes § 17b-61 (b) provides, in pertinent part: "[T]he applicant . . . if aggrieved, may appeal therefrom in accordance with § 4-183." General Statutes § 4-183 (a) provides in relevant part that "[a] person . . . who is aggrieved by a final decision may appeal to the Superior Court. . . ." "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board,203 Conn. 317, 321 (1987).
In the present matter the plaintiff was denied Title XIX benefits. In this appeal, DSS has not challenged aggrievement. This court finds that the plaintiff is aggrieved.
B. Timeliness of Appeal
General Statutes § 4-183 (c) provides, in relevant part: "Within forty-five days after mailing of the final decision under § 4-180
. . . a person appealing . . . shall serve a copy of the appeal on the agency that rendered the final decision . . . and file the appeal with the clerk of the superior court . . .
Through notice dated August 2, 2000, DSS transmitted the FHO's final decision. (ROR, pp. 1-6). The plaintiffs filed this appeal in the Superior Court, judicial district of New Haven on September 15, 2000. It was thereafter transferred to the judicial district of New Britain. The defendant has not raised a jurisdictional defect. Thus, this court finds the appeal to be timely.
 IV. Standard of Review
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted. . . ." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties v. Commissioner,253 Conn. 661, 668 (2000), U.S. cert. denied, 121 S.Ct. 1089 (2001). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful CT Page 10651 procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).
 Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [S]ubstantial evidence . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 676-77.
The court must search the entire record to determine whether substantial evidence exists to support the agency's findings of fact, and whether the conclusions drawn from those facts are reasonable. Dolgnerv. Alander, 237 Conn. 272, 283 (1996).
 Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate CT Page 10652 duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 669.
 V. Discussion
A. Plaintiff's Claim of Error.
The plaintiff has briefed numerous claims of error:
 1. The plaintiffs substantial rights were prejudiced because of the FHO's rejection of documentary evidence as hearsay;
 2. The factual findings of the FHO were clearly erroneous, arbitrary, capricious and an abuse of discretion;
 3. DSS violated its own regulations by failing to promptly process the plaintiffs September 1999 application for CCAP benefits.
B. The Text of Pertinent Portions of the August 2, 2000 Final Decision
The FHO framed the issue to be addressed in the final decision in the following manner: "At issue is whether the Child Care Assistance Program's not processing a September 29, 1999 application for the appellant is correct." (ROR, p. 1.)
The FHO, in the final decision stated the following, in relevant part:
 DISCUSSION It should first be noted that the hearing schedule notice was sent out with the issue listed as denial of Child Care Assistance. The appellant's representative CT Page 10653 wished to go forward on an issue of a September 29, 1999 application. She wished to go forward based on this hearing being requested prior to the above mentioned denial letter. In addition, she wished to go forward based on a December 22, 1999 telephone call with staff at the Child Care Assistance Program stating there was no record of the September 29, application for the appellant and three other women.
 The appellant's representative submitted a copy of pages of an application signed by the appellant on September 23, 1999, a copy of a Parent/Provider agreement form signed by staff at the Elizabeth Celotto Child Care Center on September 1, 1999 and by the appellant on September 23, 1999 and school attendance verification dated September 1, 1999. Also submitted was a cover letter from the Elizabeth Celotto Center to the Child Care Assistance program dated September 29, 1999 specifically indicating that the appellant's application was being forwarded among other applications. Two separate affidavits were also submitted from two different employees at the Celotto Center. The first affidavit indicates that the employee did submit and mail the appellant's application to the Child Care Assistance Program on or about September 29, 1999 and sent a letter to CCAP on December 17, 1999 inquiring about the status of the application. A copy of the December 17, 1999 letter was submitted. The second affidavit from a second employee speaks to her follow-up conversation on October 15, 1999 concerning several applications submitted on September 29, 1999. The appellant's representative also submitted a January 2000 monthly billing form to the Celotto Center from the Child Care Assistance Program that reflects the grant of other women's cases of which the applications were submitted at the same time as the appellant's according to the representative's testimony.
 The bottom line in this case is that the appellant's representative submitted no evidence, which directly proves that the appellant filed an application on September 29, 1999. An example of direct proof may be an application date stamped with the Child Care Assistance Program's stamp or a fax confirmation.
CT Page 10654 DECISION The Child Care Assistance Program was correct in not taking action on an application for the appellant dated September 29, 1999 as there was not direct proof provided that proves that the appellant filed an application on this date. No further action is required from the Child Care Assistance Program.
 In support of these conclusions, the FHO made nine findings of fact:
 1. On December 4, 1999 the Child Care Assistance Program received an application signed by the appellant November 29. 1999.
2. The appellant is a high school student.
 3. On December 14, 1999 the Child Care Assistance Program issued a Missing Items Letter to the appellant requesting verification from her high school verifying her schedule and whether or not she is a full time student. A deadline date of December 24, 1999 was given on this notice for submission of the information or the application would be denied.
 4. On December 29, 1999 the Child Care Assistance Program issued a notice of denial to the appellant based on not receiving the requested information.
 5. The appellant and her representative were concerned with a September 29, 1999 application having not been granted.
 6. The affidavits submitted by the employees of the Child Care Center are hearsay.
 7. The other exhibits presented by the appellant and her representative are hearsay documents.
 8. There was no credible evidence directly proving that a September 29, 1999 application was submitted to the Child Care Assistance Program.
 9. The date that a signed application was received from the appellant to the Child Care Assistance CT Page 10655 Program was December 4, 1999.
(Citations to administrative record omitted.)
C. Analysis of Plaintiffs Claims of Error.
 1. The Plaintiffs Claim That Her Substantive Rights Were Prejudiced Because of the FHO's Rejection of Documentary Evidence as Hearsay
2. The Factual Finding of the FHO Are Clearly Erroneous, Arbitrary.
Capricious and An Abuse of Discretion.[2]
The plaintiff argues that "[a]t her administrative hearing, [she] presented several pieces of evidence that, taken together, demonstrate[d] that she submitted an application to CCAP on September 29, 1999. The hearing officer characterized all of appellant's documentary evidence as hearsay and ruled in favor of the department, finding `no credible evidence' and `no direct proof' of the September application. This ruling was made upon unlawful procedure and affected by error of law, since hearsay is acceptable in administrative proceedings. For this reason, the decision of the hearing officer should be reversed." (Citation to record omitted.) (Plaintiffs December 18, 2000 Brief, pp. 6-7.) Moreover, the plaintiff contends that "[t]here is reliable, probative and substantial evidence in the record that [she] submitted an application for child-care benefits to CCAP in September 1999. . . . The administrative hearing officer entered clearly erroneous findings of fact when she found that all of the documentary evidence was hearsay and that none of it was credible or direct. Her ruling, based entirely upon those findings of fact, was clearly erroneous as well." (Plaintiff's December 18, 2000 Brief, p. 11.)
A review of the March 20, 2000 transcript of the administrative hearing reveals that DSS and the FHO were of the belief that the plaintiff sought a fair hearing for the purpose of contesting the denial of CCAP benefits sought through the December 1999 application. (ROR, pp. 11-16; 48-50.) This file stamped application was received by Maximus on December 4, 1999 and denied on December 29, 1999. (ROR, pp. 11-16, 18.) However, the CT Page 10656 plaintiffs law student intern, Andrea Marsh, informed the FHO that the claim for an administrative hearing pertained to an application on September 29, 1999. Marsh explained that the September application contained the educational enrollment materials which were later referred to in the December 29, 1999 letter from Maximus. (ROR, pp. 18, 53-54.) The plaintiff claimed that the September 29, 1999 application had never been acted upon by DSS. Marsh explained, "[s]o at that time [the plaintiff] submitted this new application on November 29, 1999. As this was a duplicate application and follow up on her September application, [the plaintiff] did not re-submit her high school enrollment letter . . . at this time." ROR, p. 57.)
Having been presented with this explanation, the FHO permitted the plaintiff to proceed on the alleged September 29, 1999 application. (ROR, p. 53). The plaintiff offered testimony and documents in support of her contention that she had filed an application in September, 1999. (ROR, pp. 44-64.) The documents included several affidavits, a copy of an application for CCAP benefits dated September 23, 1999 with a completed high school enrollment verification form dated September 1, 1999, a September 29, 1999 cover letter from the Celotto Child Care Center which indicated that the plaintiffs application, along with the application of several other persons, were enclosed, as well as various other documents. (ROR, pp. 19-31.) The FHO accepted the proffered testimony and permitted the documents to be marked as full exhibits. (Plaintiff's Exhibits A, B C.)
DSS presented evidence disputing the plaintiffs assertion that she had filed an application for benefits in September, 1999. This evidence included the sworn testimony of DSS representative Lisa Hernandez. During her testimony and in response to the FHO's questions, Hernandez stated:
Ms. Boardman — I am going to ask the Department to comment.
 Ms. Hernandez — I can't dispute whether we received a packet or not that would fit what Ms. Marsh is talking about. It seems that it is apparent to me that yes we did in fact receive that but there was not CT Page 10657 an application in there for Ms. Ferrer as far as I am aware of and it doesn't show up in our system anywhere, nor is it in the file. Like I said I can't dispute any other people's information that may have come in that packet but we have no record of an application prior to the one that we received December fourth which was dated by Ms. Ferrer on November 29th.
 Ms. Boardman — So this was the first one that Maximus is stating that the December fourth application was the first Maximus ever received.
Ms. Hernandez — Yes.
(ROR, p. 59.)
The plaintiff is correct in her position that there is no general prohibition against the admission of hearsay evidence at an administrative proceeding. Rogers v. Board of Education of New Haven, 252 Conn. 753, 766
(2000). "Hearsay [evidence] is an out-of-court statement offered into evidence to establish the truth of the matters contained therein." (Citations omitted; internal quotation marks omitted.) Labenski v.Goldberg, 33 Conn. App. 727, 733 (1994). Moreover, "evidence in written form is not, as a matter of law, inadmissible in an administrative hearing conducted under General Statutes § 4-178 unless it substantially prejudices a party. The words substantially prejudice as they appear in the statute are to be construed according to commonly approved usage of the language. . . ." Carlson v. Kozlowski, 172 Conn. 263,266 (1977). (Internal quotation marks omitted.)
The court's review of the final decision in conjunction with the substantive evidence in the record reveals that the FHO was presented with contradictory evidence on the issue of whether DSS had received a September 1999 application from the plaintiff for CCAP benefits. The FHO evaluated the evidence and determined that "[t]he bottom line in this case is that the appellant's representative submitted no evidence which directly proves that the appellant filed an application on September 29, 1999." (ROR, p. 3.) The determination of the weight and credibility of evidence required the FRO to exercise judgment and discretion.
 The hearing officer in this case faced the dilemma of two diverse factual predicates. . . . Factual determinations of the commissioner must be upheld if there is substantial evidence in the record to support such a finding. . . . An administrative finding is CT Page 10658 supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Such a standard of review allows less room for judicial scrutiny than does the weight of the evidence rule or the clearly erroneous rule. . . . In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part.
(Citations omitted; internal quotation marks omitted.) Dore v.Commissioner of Motor Vehicles, 62 Conn. App. 604, 610-611 (2001).
This court is mindful that the "trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . ." Cadlerock Properties v. Commissioner, supra,253 Conn. 669.
The court, having reviewed the entire record, finds that the FHO's findings and conclusions are not unreasonable, arbitrary, illegal or an abuse of discretion. Accordingly, the court finds for DSS on this claim of error.
3. The Plaintiffs Claim that DSS Violated its Own Regulations By Failing to Promptly Process the September 1999 Application for CCAP Benefits.
The plaintiff asserts that "DSS has not processed [her] September application, which it received on or about September 30, 1999. It has not acted promptly to determine [her] eligibility for assistance based upon her September application, despite the fact that she met all eligibility and priority criteria when she applied." (Plaintiffs December 18, 2000 Brief, p. 14.)
The court has determined that the administrative record contains substantial evidence in support of the FHO's factual findings and conclusions that a September 29, 1999 application was not filed with DSS. It is obvious that DSS cannot process an application which it did not receive. Accordingly, the court finds for DSS on this claim of error.
 VI. CONCLUSION
CT Page 10659
For all the foregoing reasons, the court finds for DSS on all claims of error. The appeal is ordered dismissed.
BY THE COURT:
PETER EMMETT WIESE, JUDGE