[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
 I. Statement of the Case
This is an administrative appeal from a final decision of the Commission on Human Rights and Opportunities (CHRO) brought pursuant to General Statutes §§ 46a-94a and 4-183. The plaintiff is Thames Talent, Ltd. The defendants are CHRO and Angela Malizzia.[1]
 II. Procedural History
The plaintiff is a management company for musical performers. Bruce Payne is its president. In this capacity, Payne had the authority to hire and fire employees. Malizzia was hired to work for the plaintiff in October 1993 as a secretary and bookkeeper. (June 30 CHRO Decision (decision), Finding of Fact, nos. 1-2). On February 3, 1997, Payne, acting on behalf of the plaintiff, terminated Malizzia's employment. The justification given for the termination was that Malizzia did not work well with Payne. (Decision, Finding of Fact, #40).
Malizzia filed a complaint with the CHRO alleging that the plaintiff created a hostile working environment, by sexually harassing Malizzia, and subsequently discharged her in retaliation for objecting to that CT Page 11946 sexual harassment. (Decision, pp. 1-2). The CHRO hearing was held on February 10, 15 and 17, 2000, during which numerous witnesses testified and exhibits were introduced. (Decision, p. 2).
The CHRO hearing officer (CHO) issued a twenty-eight page final decision dated June 30, 2000. In that decision, the CHO found that "[Malizzia] has established by a preponderance of the evidence that the respondent sexually harassed her by creating a hostile work environment and subsequently terminated her employment in retaliation for her opposition to the harassment." (Decision, p. 1). Briefly stated, pursuant to General Statutes § 46a-86, the CHO awarded the plaintiff monetary damages for back pay with interest and ordered the plaintiff to cease and desist further discriminatory treatment of employees. In addition, the CHO acting in accordance with General Statutes § 46a-86 (b) ordered the plaintiff to pay the CHRO a sum of money as reimbursement for interim unemployment compensation paid for Malizzia. The CHO did not order Malizzia to be reinstated in her employment as it was not requested by Malizzia, nor was it a feasible or appropriate remedy.
The plaintiff commenced this administrative appeal through its July 28, 2000 complaint as thereafter amended by pleading dated November 16, 2000. The parties have filed comprehensive briefs with the court along with the voluminous administrative record. On July 18, 2001, the parties, acting through their legal counsel, presented extensive argument on the issues in dispute.
 III. Jurisdiction
A. Aggrievement
General Statutes § 17b-61 (b) provides, in pertinent part: "[T]he applicant . . . if aggrieved, may appeal therefrom in accordance with § 4-183." General Statutes § 4-183 (a) provides in relevant part that "[a] person . . . who is aggrieved by a final decision may appeal to the Superior Court. . . ." "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board,203 Conn. 317, 321 (1987).
In the present appeal, the plaintiff is the defendant Malizzia's former employer. The defendant CHRO found that Malizzia had prevailed on her claim of sex discrimination brought pursuant to General Statutes §46a-60. The defendants in this appeal have not challenged aggrievement. CT Page 11947 Therefore, this court finds that the plaintiff is aggrieved.
B. Timeliness of Appeal
General Statutes § 4-183 (c) provides, in relevant part: "Within forty-five days after mailing of the final decision under § 4-180
. . . a person appealing . . . shall serve a copy of the appeal on the agency that rendered the final decision . . . and file the appeal with the clerk of the superior court
The CHRO transmitted the CHO final decision on or about June 30, 2000. The plaintiff filed this appeal in the Superior Court, judicial district of Stamford-Norwalk on August 1, 2000, and was thereafter transferred to the judicial district of New Britain on October 11, 2000. The defendants have not raised a jurisdictional defect. Thus, this court finds the appeal to be timely.
 IV. Standard of Review
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted. . . ." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties v. Commissioner,253 Conn. 661, 668 (2000), U.S. cert. denied, 121 S.Ct. 1089 (2001). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).
 Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, CT Page 11948 arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [S]ubstantial evidence . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 676-77.
The court must search the entire record to determine whether substantial evidence exists to support the agency's findings of fact, and whether the conclusions drawn from those facts are reasonable. Dolgnerv. Alander, 237 Conn. 272, 283 (1996).
 Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 669. CT Page 11949
 V. Discussion Plaintiff's Claims of Error
The plaintiff has briefed three claims of error:
 1) The CHO erred by awarding back pay without an order of employment reinstatement.
 2) The CHO erred in awarding prejudgment interest and postjudgment interest.
 3) The CHO erred in ordering that the plaintiff reimburse CHRO for interim unemployment compensation benefits paid to Malizzia.
 Analysis of Plaintiff's Claims of Error
 1. The plaintiff's claim the CHO erred by awarding back pay without an order of reinstatement
The plaintiff argues that "[a] CHRO Referee is not legally able to award monetary relief in response to a sexual harassment complaint without ordering that the employee be reinstated to her position with the employer. This is reflected in the plain language of [General Statutes § 46a-86 (b)] that enables the Referee to award relief." (Plaintiff's February 1, 2001 Brief, p. 5). The defendant responds by contending that the CHO's award of back pay was consistent with both statutory and case law. (Defendant's April 6, 2001 Brief, pp. 6 et seq.).
The CHO's final decision included fifty-two detailed findings of fact and an extensive discussion of the conclusions of law.[2] A brief review of the final decision is helpful in understanding the positions of the parties. The CHO found that Malizzia commenced her employment with the plaintiff "in October 1993 as a secretary and/or bookkeeper." (Decision, Finding of Fact, #2). Bruce Payne is the president of the plaintiff business entity. In this capacity, he "had the power to hire, promote, demote, and discharge employees." (Decision, Finding of Fact, #1). In December 1995, Malizzia began to work solely for Payne. Her "job duties when working for Payne consisted primarily of handling office correspondence, handling fan mail for the musicians, assisting with album artwork, and typing lyric sheets." (Decision, Finding of Fact, ##2-3). In this capacity and "[w]ithin a few months after beginning to work solely for Payne, their relationship began to be strained and [Malizzia] became uncomfortable around Payne due to a series of incidents involving certain of his comments and actions." (Decision, Finding of Fact, #5). The CT Page 11950 majority of these incidents occurred between July 1996 and January 1997. (Decision, Finding of Fact, #6). Payne's "comments and actions" as detailed by the CHO can best be described as grossly inappropriate.[3]
Malizzia informed Payne during a meeting on June 31, 1997 that "she was offended and bothered by Payne's behavior and comments, and that they were affecting her attitude at work." (Footnote omitted.) (Decision, Finding of Fact if 39). Thereafter, at a subsequent meeting on February 3, 1997, "Payne terminated [Malizzia's] employment, and told her that she was being terminated because they could not work together." (Decision, Finding of Fact #40).
The CHO concluded in part from the evidence and findings that "Payne's attention was predominantly focused on [Malizzia's] body, in particular her breasts, her legs, and her buttocks." (Decision, p. 15). Moreover, Malizzia "testified credibly that Payne's conduct was humiliating and intimidating. She felt demeaned and worried that [the plaintiff's] clients would view her not as a professional but as a sex object. She felt powerless in the small office, unable to assert her concerns to Payne for fear of reprisal — not unusual, given his authority as president and her vulnerability as a young employee." (Decision, pp. 15-16). Regarding Malizzia's employment termination on February 3, 1997, the CHO found that she "has convincingly met her burden of proving that her discharge was motivated by retaliation. . . ." (Decision, p. 22). Based upon theses findings, the CHO found that the plaintiff's conduct violated General Statutes § 46a-60.[4]
The CHO made numerous findings on the issue of damages. (Decision, Finding of Fact ##41-52). In connection with these findings, the CHO performed numerous calculations and awarded Malizzia total damages of $45,473.00, which represented back pay minus numerous offsets plus interest.[5]
The CHO discussed and analyzed the feasibility of reinstatement: "In the matter before me, [Malizzia] is not seeking reinstatement, unsurprising given the office environment and her strained (and seemingly irreparable) relationship with Payne. Simply put, reinstatement is not a feasible remedy." (Decision, p. 25). The CHO indicated that Malizzia found new employment earning less money but "she is comfortable and satisfied." (Decision, p. 25). Accordingly, the CHRO order did not include reinstatement.
As previously stated, the plaintiff takes the position that, as a matter of law, the CHO cannot award back pay without an order of reinstatement. The court does not agree with this proposition. CT Page 11951
General Statutes § 46a-86 (b) provides in relevant part:
 In addition to any other action taken hereunder, upon a finding of discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay . . . provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.
The Connecticut Supreme Court has, on numerous occasions, addressed the application of this statutory provision to cases before it.
 One type of damages that is commonly awarded . . . requires that any amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. . . . We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages.
(Citations omitted; internal quotation marks omitted.) Ann Howard'sApricots Restaurant, Inc. v. CHRO, 237 Conn. 209, 228-229 (1996).
The Supreme Court in Bridgeport Hospital v. CHRO, 232 Conn. 91, 111
(1995) rejected the CHRO's attempts to award damages for emotional distress and attorney's fees. The court in its analysis of the issue stated:
 While we recognize that a hearing officer has broad authority to construct remedies for employees who have suffered discrimination in the workplace, this power can be exercised only to accomplish the remedial purpose of the statute, which is to restore those CT Page 11952 wronged to their rightful economic status absent the effects of the unlawful discrimination.
(Citations omitted; internal quotation marks omitted.) Id., p. 111.
Thereafter, in Commission on Human Rights and Opportunities v. Truelove Maclean, Inc., 238 Conn. 337 (1996), the court addressed the issue of whether a hearing officer upon finding discriminatory employment practices must order reinstatement and award back pay. The court reasoned:
 Whether a hearing officer is required to award reinstatement and back pay upon a finding of discriminatory employment practices depends on a proper interpretation of § 46a-86 (b). We approach this issue in light of well established principles of statutory construction. It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation.
(Footnote omitted; internal quotation marks omitted). Id., pp. 348-349.
In discussing the legislative purpose of General Statutes § 46a-86
(b), the court indicated that:
 Under our laws prohibiting discrimination in the workplace, a hearing officer must construct a remedy for discriminatory employment practices in order to render a decree that will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future. This remedial goal is furthered by vesting in a hearing officer broad discretion to award reinstatement, back pay or other appropriate remedies specifically tailored to the particular discriminatory practices at issue. CT Page 11953
(Citations omitted; internal quotation marks omitted.) Id., p. 350.
The court finds that the plaintiff's restrictive interpretation of General Statutes § 46a-86 (b) is inconsistent with the remedial purpose for which it was enacted, namely, to "restore those wronged to their rightful economic status absent the effects of the unlawful discrimination." Bridgeport Hospital v. CHRO, supra, 232 Conn. 111. The CHO carefully evaluated the issue of whether an appropriate remedy should include reinstatement. (Decision, p. 25). The CHO found reinstatement inappropriate in significant part because of Payne's conduct, which the court believes can be reasonably characterized as outrageous. The CHO's factual findings on this point are not challenged by the plaintiff. If the court were to adopt the plaintiff's reasoning, this defendant and all others similarly situated would be deprived of the ability to remedy the effects of unlawful employment discrimination.[6] The "fundamental objective is to ascertain and give effect to the apparent intent of the legislature." State v. Burns, 236 Conn. 18, 22 (1996). Furthermore, "[i]f a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to "bizarre results' destructive of that purpose, the former should prevail." Id., p. 23. In the instant case, the plaintiff's interpretation would provide a substantial incentive to employers faced with a potential discrimination suit to create the most hostile work environment possible in order to ensure that reinstatement would not be an option, thereby depriving any such person pursuing a discrimination claim pursuant to General Statutes § 46a-86 (b) of any remedy other than a cease and desist order. Such an interpretation would not serve the remedial purpose of General Statutes § 46a-86 (b) to "restore those wronged to their rightful economic status absent the effects of the unlawful discrimination." Bridgeport Hospital v. CHRO, supra,232 Conn. 111.
Additionally, the court finds guidance and support of its interpretation of General Statutes § 46a-86 (b) by reference to federal law:
 . . . it is useful to recognize the scope of our past reliance on federal law concerning discriminatory employment practices. Although the language of [Title VII of the Civil Rights Act of 1964, § 703(a) (1); 42 U.S.C. § 2000e-2 (a)] and that of the Connecticut statute differ slightly, it is clear that the intent of the legislature in adopting 1967 Public Acts, No. 426 (which extended the provisions of the Fair Employment Practices Act. to prohibit CT Page 11954 discrimination on the basis of sex) was to make the Connecticut statute coextensive with the federal. Although we are not bound by federal interpretation of Title VII provisions, [w]e have often looked to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute.
(Citations omitted; footnote omitted; internal quotation marks omitted.)State v. Commission on Human Rights and Opportunities, 211 Conn. 464,469-470 (1989). The federal courts in Title VII cases award back pay to successful plaintiffs without an order of reinstatement. See e.g. Reedv. Lawrence, 95 F.3d 1170 (2d Cir. 1996); Saulpaugh v. Monroe CommunityHospital, 4 F.3d 134 (2d Cir. 1993) (sexual harassment retaliatory termination cases.)
The CHO's obligation upon finding unlawful discrimination is to construct a remedy specifically tailored to remedy the circumstances presented. The remedial goal of our laws prohibiting sex discrimination in the workplace may be served by awarding "reinstatement, back pay or other appropriate remedies specifically tailored to the particular discriminatory practices at issue." Commission on Human Rights andOnportunities v. Truelove Maclean, Inc., supra, 238 Conn. 350. In short, the remedial goal of back pay awards is to make the victim of unlawful discrimination financially whole. In this case, the CHO concluded that "reinstatement is not a feasible remedy", a conclusion which the plaintiff does not challenge. Under these circumstances, the plaintiff's interpretation of General Statutes § 46a-86 (b) would force a "bizarre result" by rewarding the plaintiff for engaging in such outrageous conduct that reinstatement was not an option. Thus, this court finds the CHO's award of back pay was authorized by General Statutes § 46a-86 (b).
Accordingly, the court finds for the defendant in this claim of administrative error.
 2. The plaintiff's claim that the CHO erred by awarding prejudgment and postjudgment interest
The CHO awarded Malizzia both prejudgment and postjudgment interest. (Decision, pp. 26-28). The plaintiff contends that the CHO lacked the authority to award this interest "on two grounds: (1) . . . both the legislature and the Supreme Court have restricted the CCHRO's authority to award monetary relief for sexual harassment to back pay associated with reinstatement of employment; and (2) a CCHRO hearing is not "a civil action' as contemplated by General Statutes § 37-3a."[7]
(Plaintiff's February 1, 2001 Brief, p. 8). CT Page 11955
The plaintiff readily acknowledges that this issue has been addressed on numerous occasions by the Superior Court. Without exception, these rulings have upheld an award of interest. See e.g. Connecticut Dept. ofCorrections v. CHRO, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket no. 559284 (April 27, 1997, McWeeny, J.);Frank's Supermarket v. Michaud, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket no. 549356 (April 22, 1996, Silbert, J.); The Seafood Peddler v. CHRO, Superior Court, judicial district of Fairfield at Bridgeport, Docket no. 306169 (November 24, 1995, Cone, J.).
This court finds that these decisions are well-reasoned, legally correct, and dispositive of this issue. These courts have held that an award of interest is allowable on several grounds. First, as previously stated, the remedial goal of back pay awards is to make the victim of unlawful discrimination financially whole. This can only be achieved if interest is applied to the award. Second, the statutory authority for an award of interest can also be found in General Statutes § 37-3a, "interest at a rate often per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings . . . In this regard Connecticut Practice Book § 14-6 provides "[f]or purposes of these rules, administrative appeals are civil actions." Third, an examination of federal law, which has been determined to be coextensive with Connecticut's laws prohibiting sexual discrimination in the workplace, reveals that interest is an appropriate component of an award in a Title VII case.
 Title VII authorizes a district court to grant pre-judgment interest on a back pay award. Its purpose is to prevent an employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages. Therefore, this Court has held that it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award. Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded.
(Citations omitted; internal quotation marks omitted.) Saulpaugh v.Monroe Community Hospital, 4 F.3d 134, 145 (2d Cir. 1993).
This court finds that the CHO did not commit error by awarding interest in conjunction with back pay. Accordingly, the court finds for the defendants on this claim of error. CT Page 11956
 3. The plaintiff's claim that the CHO erred in ordering that the plaintiff reimburse the CHRO for interim unemployment compensation benefits paid to Malizzia
The plaintiff argues that "[i]n the present case, it follows that if the back pay award was improperly made, such calculation should never been reached and no amount is owed by the plaintiff to the commission." (Plaintiff's February 1, 2001 Brief, p. 11). The court has previously discussed the issue of back pay and has affirmed the administrative award. General Statutes § 46a-86 (b) provides that "interim earnings, including unemployment compensation and welfare assistance . . . shall be deducted from the amount of back pay. . . . The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency."
The CHO's order conforms with the law. Therefore, the court finds for the defendants on this issue.
 VI. Conclusion
For all the foregoing reasons, the court finds for the defendants on all claims of error. Accordingly, the appeal is ordered dismissed.
BY THE COURT:
PETER EMMETT WIESE, JUDGE